## Isaac Pickard *vs.* William F. Howe.

The notice which a person who impounds beasts is required by Rev. Sts. c. 113, § 8, to give to the owner of them, within twenty four hours, need not state the hour of the day when they were impounded. And proof that notice was left in the hands of one of the owner's family, at his dwelling-house, is sufficient to authorize a jury to find that it was left at his place of abode.

A field driver, who impounds beasts for going at large on a public highway, is not bound, by Rev. Sts. c. 113, § 6, to leave with the pound keeper a memorandum, stating the cause of the impounding and the sum that he demands from the owner.

It is no objection to the notice required, by Rev. Sts. c. 113, § 8, to be given by a field driver to the owner of impounded cattle, that the field driver's name is signed by another person, if it be done at the field driver's request.

In an action of replevin brought against a field driver by the owner of cattle impounded by him for going at large, the defendant may show in evidence not only that he gave the plaintiff the notice required by Rev. Sts. c. 113, § 8, but also that he posted notices according to the provisions of § 9. But the plaintiff cannot give evidence that the cattle were not suitably provided for, or were ill treated in the pound.

A notice given by a field driver to the owner of cattle, that they are impounded for going at large on the public highway, is *prima facie* evidence that they were so at large, and puts on the owner the burden of proving the contrary.

A turnpike is a public highway, within the meaning of Rev. Sts. c. 19, § 22, which require field drivers to take up and impound cattle going at large in the public highways.

This was an action of replevin, brought to try the legality of the impounding, by the defendant, of two oxen of the plaintiff. At the trial in the court of common pleas, before *Ward,* J. the defendant, to justify the taking and detention

Pickard v. Howe.

of the oxen, gave in evidence the records of the town of
Rowley, showing that he was chosen a field driver of that
town for the year 1844, and was duly sworn into office. He
also offered in evidence the following notice, said to have
been left at the residence of the plaintiff within twenty four
hours of the impounding of the oxen : " To Mr. Isaac
Pickard. I have taken up, on the eighth day of September
instant, and impounded in the town pound, under the care of
Thomas Creasey, pound keeper, one dark red ox, with a slit
in each ear, brass knobs on horns, and one light red ox, with
white face and feet, and knobs on the horns, supposed to
belong to you. Found said oxen running at large, without a
keeper, upon the public highway in the town of Rowley, and
for that cause said oxen are impounded. William F. Howe,
Field Driver of the town of Rowley. September 9th 1844,
within twenty four hours."

To this notice the plaintiff objected, but the judge ruled
that it was sufficient.

The defendant then offered in evidence a public notice,
put up by him in Rowley and the two adjacent towns, in
which the oxen impounded were described as belonging to
persons unknown. To this the plaintiff objected. But it
was admitted ; the judge directing the jury that if the de-
fendant knew the owner, the last notice must be laid aside ;
and that if the owner was not known to the defendant, the
first notice must be rejected. It appeared that neither of
these notices was written or signed by the defendant, but that
both were written and signed by one Todd, at the request of
the defendant — the special notice, in the defendant's pres-
ence, and the general notice in the absence of the defendant —
but they were all delivered to the defendant, read by him,
pronounced by him correct, and then the special notice was
carried by him to the plaintiff, and the general notice was
posted up by him. These notices were objected to by the
plaintiff, but the objection was overruled.

To prove delivery of notice to the plaintiff, the defendant
called a witness, who testified that he saw the defendant in

the forenoon of September 9th, with the notice ; that the de-
fendant went into the plaintiff's house, and that the witness
followed him, and saw the notice in the hands of a girl, the
daughter of the plaintiff, who said to the witness, " here, do
you want this paper ? " to which the witness replied, " no, I
want to be sure that you get it." He testified that it was
left in her hands ; and it appeared that it was produced at the
trial by the plaintiff's counsel, on notice to the plaintiff to
produce it. The plaintiff objected that this was not suffi-
cient to show that the notice was left at the last and usual
place of the plaintiff's abode ; but the judge ruled that it was
sufficient to go to the jury.

It was objected by the plaintiff, that the memorandum left
with the pound keeper by the defendant was not sufficient ;
but the judge ruled that no memorandum was necessary.

The plaintiff offered to show that the oxen, after they
were taken and before they were replevied, were neglected,
ill treated and injured by the pound keeper ; that after they
had been driven three miles and a half, in a warm afternoon,
they were put, with seventeen others, in a pound, and had
neither food nor water for more than twenty four hours ; and
that they had not, at any time, proper food or drink, and
were injured by bad treatment in the pound. But the judge
ruled that " evidence to show neglect in the pound keeper
was inadmissible, unless brought home to the defendant."

The plaintiff attempted to show that the oxen, when taken
up, were not in the highway, and offered evidence upon this
point. The judge instructed the jury that the defendant's
notice to the plaintiff was not only *prima facie* evidence that
the oxen were in the highway, when taken by the defendant,
but changed the burden of proof, and that if the jury were
left in doubt of the truth of the plaintiff's evidence on this
point, they must return a verdict for the defendant.

It appeared that the oxen were taken on Sunday ; and the
plaintiff contended that the defendant could not, as field driver,
take them on Sunday. But the judge ruled otherwise.

The evidence was, that the place where the defendant

alleged that he took the oxen, was on the Newburyport Turnpike ; that the defendant had a lease of the land on the side of the turnpike ; and that part of the nineteen cattle which he impounded were feeding and browsing. The plaintiff requested the judge to instruct the jury, that if the cattle were feeding by the side of the travelled path of the turnpike, upon the herbage belonging to the defendant, and not actually on the travelled path, he should have taken them damage feasant, and not as being at large. But the judge declined so to instruct the jury.

A verdict was found for the defendant, and the plaintiff alleged exceptions to the rulings of the judge.

*N. J. Lord & O. P. Lord,* for the plaintiff. 1. The notice that was put into the hands of the plaintiff's daughter was insufficient. The Rev. Sts. *c.* 113, § 8, require that " when beasts are impounded, the person impounding shall, within twenty four hours thereafter, give notice thereof, in writing, to the owner, or the person having the care of them, if known," &c. " which notice shall be delivered to the party, or left at his place of abode, and shall contain a description of the beasts, and a statement of the time, place, and cause of impounding." The object of this notice is, first, that the owner shall speedily know that his cattle are impounded; and, secondly, that he may know whether they are legally impounded, and whether he must pay damages, &c. or may replevy. The notice was uncertain as to the time when the cattle were impounded. The words " within twenty four hours," which were put at the bottom of the notice, do not prove that the notice was given within twenty four hours. The hour of the impounding should have been stated in the notice, so that the plaintiff might have seen whether the notice was seasonably given. See *Penniman* v. *Cole,* 8 Met. 502. The notices, which were posted up by the defendant, in which the cattle were said to belong to some persons unknown, cannot be joined with the other notice, in order to make out a compliance with the law. The defendant, after giving the plaintiff notice that *his* cattle were taken, cannot

say that he did not know whose cattle they were.  The latter notices were not admissible in evidence, after the other notice had been admitted.  By admitting them, the court, in effect, authorized a verdict for the defendant, if part of the jury found for him on one notice, and part on the other.

2.  The evidence that the cattle were injured in the pound, was wrongly excluded.  A private individual, who puts cattle, taken damage feasant, into the town pound, is not liable for any injury which they may receive from other cattle confined there.  *Brightman* v. *Grinnell*, 9 Pick. 14.  But it was held, in *Adams* v. *Adams*, 13 Pick. 384, that if cattle impounded by a field driver are injured in the pound, they may be taken from him by a writ of replevin ; he being a trespasser *ab initio*.  This was before the revised statutes were in force ; but the language of those statutes is not such as to alter the pre-existing law on this point.  And if this action can be brought against the field driver — that is, if the cattle are in his possession — then he is liable for injuries done to them in the pound.  The Rev. Sts. *c.* 113, § 1, require that cattle, taken up by a field driver for going at large, shall be impounded in the town pound, and be taken care of by the pound keeper.  By § 14, if impounded cattle escape, or are rescued, the field driver, as well as the pound keeper, may retake them.  The field driver, and not the pound keeper, has the *possession* of the cattle ; the pound keeper has only the *custody* of them.  By § 1, he is to furnish them with food and water, " so long as they are detained in his custody."  By §§ 8 and 11, certain duties are imposed on " the person impounding," which show that he has the legal possession of the cattle.  By § 12, " the person who impounded the beasts shall cause them to be sold," &c.  Personal property passes by delivery ; and no one would be required to sell, who has not possession, so that he can deliver.  Replevin lies against those only who have possession, (*Simpson* v. *McFarland*, 18 Pick. 430,) and cannot be brought against the pound keeper, who has only the custody of the cattle, and is obliged to receive them, but against the field driver, who is the wrong-doer.  It may be

said that this will deprive the keeper of his pay ; but he who illegally commits cattle to the pound is liable to the keeper for the support of them.

The plaintiff's injury was double.   His oxen were unlawfully impounded, and were abused in the pound.   He could not replevy them from the pound keeper for the impounding, but he may replevy from the field driver for the abuse ; the pound keeper being merely his servant.

3. A memorandum of the cause of the impounding should have been left by the defendant with the pound keeper. *Bruce* v. *Holden*, 21 Pick. 187.   A contrary decision was made in *Wild* v. *Skinner*, 23 Pick. 251 ; but the former case was there overlooked.

4. A turnpike is not a highway, within the meaning of the Rev. Sts. *c.* 19, § 22, which direct field drivers to take up cattle " going at large on the public highways," and restrain them in a town pound, according to the provisions of *c.* 113. See Rev. Sts. *c.* 2, § 6, clause sixth.  ·The case of *Gilmore* v. *Holt*, 4 Pick. 258, which will be cited, on this point, by the defendant's counsel, was under *Sts.* 1799, *c.* 61, and 1804, *c.* 44, which authorized any town to order and direct that no cattle should go at large " within the limits of such town," without mentioning highways.   The Rev. Sts.·*c.* 19, § 22, mention "public highways," and " town ways," and " com mon and unimproved lands."   These words have a technical meaning, and exclude all places not mentioned.   Neither highways, town ways, nor common lands, include turnpikes.

5. The oxen should have been taken damage feasant, if they were feeding on the defendant's herbage ; unless he has a choice of remedies, which will not be pretended.

6. It was wrongly ruled, at the trial, that the notice left with the defendant's daughter was not only *prima facie* evidence that the oxen were in the highway, when taken, but also changed the burden of proof.   There is a difference between the memorandum left with the pound keeper and the notice left with the party.   The former is in the nature of a return by a public officer, but not the latter.   Private persons, who

take up cattle going at large, must give notice to the owner. But their act is not official, nor even *prima facie* evidence. The Rev. Sts. *c.* 113, § 8, make no distinction between field drivers and private persons. If the notice, in this case, was evidence, and changed the burden of proof, it was important that the hour should be stated in it. Notice is for the benefit of the owner of the cattle, and not, like the return of process, for the benefit of the officer, and to protect him.

*Perkins*, for the defendant. 1. The form of the notice given to the plaintiff is such as has been set forth in all the books, called " Town Officer," from Freeman's, which was published in the last century, down to the present time. The *St.* of 1788, *c.* 65, § 4, prescribed no form of notice. It merely directed that " the time, place and cause of impounding " should be notified to the owner in writing, when he was known. When the legislature require the hour and the minute, as well as the day, to be stated in any case, they so direct. See Rev. Sts. *c.* 59, § 24, *c.* 90, § 30. " The time," when not otherwise expressed, means the day. Generally, there are no fractions of a day. The twenty four hours are to commence from the impounding, and not from the notice, and the time is to be proved *aliunde.* The reason for giving notice is, not that the owner of the cattle may know therefrom whether he has notice seasonably. Such a reason could not apply to any cases, except those in which notice is given to the owner in hand. The Rev. Sts. *c.* 113, § 9, require the posting of notice within forty eight hours ; and " a like notice in some public newspaper," if no owner appears within seven days. The exact hour of the impounding must be in the posted and printed notices, if it must be in the personal notice.

The general notice, which was posted, was rightly received in evidence ; that or the other to avail, as the facts should appear.

2. The evidence of the abuse of the oxen in the pound was properly rejected. For that abuse, if there were any, the pound keeper alone is answerable. The case of *Adams* v. *Adams,* 13 Pick. 384, was decided in 1832, before the

passing of the revised statutes, and while *St.* 1788, *c.* 65, was in force. By that statute, it was the duty of the person impounding cattle to furnish them with food and water. And he was not bound to confine them in a public pound. By *St.* 1834, *c.* 184, § 4, field drivers were required to impound cattle, going at large in the public highways, &c. in a town pound, and the pound keeper was required to furnish them with suitable food and water ; and the provisions of that statute are reënacted in Rev. Sts. *c.* 19 and 113. The pound keeper is an officer of the law, and not the servant of the field driver. The case of *Adams* v. *Adams* is therefore inapplicable to the present case.

3. The law does not require that a memorandum should be left with the pound keeper, when cattle are impounded for being at large. Rev. Sts. *c.* 113, § 6, apply only to cases of impounding cattle found damage feasant. *Wild* v. *Skinner*, 23 Pick. 251.

4. The case of *Gilmore* v. *Holt*, 4 Pick. 258, settles the point, that a turnpike is a highway, within the provision for impounding cattle going at large on the public highways.

5. The cattle being found at large on the highway, it is immaterial whether they were feeding on the defendant's herbage or not.

6. A field driver being a sworn officer, his notice, left with the owner of cattle impounded, is clearly *prima facie* evidence ; and the burden is on such owner to prove its falsity. *Bruce* v. *Holden*, 21 Pick. 187. See also *Jones* v. *Stevens*, 5 Met. 373.

DEWEY, J. It is no sufficient objection to the validity of a notice left by a field driver with the owner of the cattle, that it does not particularly set forth the hour of the day when the cattle were taken up. Such notice must, in point of fact, have been given within twenty four hours after the cattle were taken up and impounded ; and this fact must be shown by competent evidence. This being established, the notice is valid, although the hour of the day on which they were thus taken up does not appear on the face of the notice itself. In

the present case, the notice, as was shown by other evidence, was left at the house of the plaintiff, within the twenty four hours. It was sufficient that it was left at the dwelling-house of the party. The statute does not require a personal service upon the owner of the cattle ; and. the evidence was sufficient to authorize the jury to find that the notice was left at the plaintiff's place of abode.

The next inquiry is, whether it be necessary for the field driver to leave a written notice with the pound keeper, when cattle are taken up and impounded for going at large upon the public highway. No such notice having been left with the pound keeper in the present case, this question becomes a material one, and requires a direct decision of that point. The question is the more embarrassing, from the circumstance of there having been conflicting opinions held by this court upon the point. In *Bruce* v. *Holden*, 21 Pick. 187, it was held that it was the duty of the field driver in such cases to file with the pound keeper a written memorandum of the cause of impounding, and of his fees and expenses. The question, however, arose in that case incidentally, and in reference to the effect to be given to such certificate, it being contended that it was an official act and to have effect as such ; and the court so held. This case was decided at the sittings in Middlesex, in October 1838. At the October term 1839, in Norfolk, this question again arose, in the case of *Wild* v. *Skinner*, 23 Pick. 251. In the discussion of this latter case, no reference was made to the case of *Bruce* v. *Holden*, and the point was treated, both by the court and the bar, as an open one. This case presented the question of the necessity of such notice directly, the plaintiff contending that the detention of the cattle was illegal, because the field driver had not left with the pound keeper a memorandum stating the cause of impounding, and the damages demanded, according to the provisions of Rev. Sts. c. 113, § 6. In reference to this objection, it was held by the court that the duty of the field driver did not require such proceedings on his part, and that, when cattle are thus impounded, all that he has a right to

demand is his fees, which are regulated by statute, and known to the pound keeper ; and as to other damages he has no claim for any. This opinion is directly in opposition to that previously given in the case of *Bruce* v. *Holden*. We have found it necessary to reconsider the point ; and the result has been, upon further consideration of the proper construction to be given to the Rev. Sts. *c.* 113, § 6, the court are of opinion that this section is not applicable to field drivers who have taken up and impounded cattle going at large in the highway without a keeper ; thus adopting and confirming the decision in the case of *Wild* v. *Skinner*, and for the reasons stated in the opinion pronounced by the court in that case.

It is no sufficient objection to the legality of the notice to the owner, that the field driver also posted up notices in Rowley and two adjacent towns, in which notices the cattle impounded were described as belonging to some person unknown. The field driver might, for the greater certainty of giving the proper notice, adopt both methods of notification ; and might legally show both at the trial. It is enough that proper notice was given to the plaintiff as the known owner of the cattle.

It is also sufficient that the special notice to the owner was written at the request and under the direction of the field driver, and in his presence, and by him taken and delivered to the plaintiff, or left at his dwelling-house with his servant.

Nor would it constitute any sufficient ground for maintaining the present action, for the plaintiff to show that the cattle were not suitably provided for by the pound keeper, or were ill treated by him. This action is against the field driver, and not the pound keeper. The Rev. Sts. *c.* 113, § 1, require of the pound keeper, in such cases, the making of all necessary provision for the sustenance of the beasts impounded.

The instruction to the jury was correct, that the notice to the plaintiff, given by the field driver, stating that the cattle had been taken up, being at large in the highway, was *prima facie* evidence that the cattle were thus at large on the highway, and changed the burden of proof, on that point, upon

the plaintiff, if he alleged the contrary. This notice, being that required by c. 113, § 8, was an official notice, and one *required to be given as well when cattle are taken up on the highway by a field driver*, as when they are distrained for doing damage. The point of controversy in the cases of *Bruce* v. *Holden* and *Wild* v. *Skinner* arose upon the construction of § 6; both cases assuming that the notice required by § 8 must be given in all cases of impounding in the town pound. This, being an official certificate, is to be taken to be correct, until the contrary is shown.

No objection arises as to the place where the cattle were taken up; a turnpike road being a highway within the meaning of the statute restraining cattle from going at large. *Gilmore* v. *Holt*, 4 Pick. 258. And they were lawfully taken up on Sunday. *Wild* v. *Skinner*, 23 Pick. 251.

*Exceptions overruled.*